(No. 36334.—

The People of the State of Illinois, Defendant in Error, *vs.* Robert Ware, Plaintiff in Error.

*Opinion filed September 22, 1961.*

Howard T. Savage, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher, and M. Robert Ostrow, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a bench trial in the criminal court of Cook County, the defendant, Robert Ware, was found guilty of the crime of armed robbery and sentenced to the penitentiary for a term of not less than one nor more than three years. He prosecutes this writ of error contending principally that the evidence was not sufficient to establish his guilt beyond a reasonable doubt.

Defendant, 25 years old, was a Chicago police officer. On the night of October 16, 1959, while off duty and in civilian clothes, defendant, who had two pistols on his person, met with friends at a tavern, had two drinks and departed. As he walked along the street he saw a motorcycle parked in front of a poolroom and, believing it to be the machine of a friend on the police force, started to blow the horn to attract his friend's attention. M. C. Hudson, 20 years old, was standing in front of the poolroom and shouted to defendant to stop blowing the horn. According to defendant obscene language was used and there were numerous persons on the street. He testified he walked up to Hudson, showed his badge and identified himself as a police officer, and that Hudson, whose eyes were "glassy" and "stary," said nothing. When a crowd began to gather, defendant ordered Hudson into the poolroom. It was Hudson's testimony that defendant had not identified himself as a police officer up to this point but had put his hand on the butt of a pistol under his coat and ordered the witness and another fellow standing nearby to walk to the rear of the poolroom. The identity of the "other fellow" does not appear, nor did he testify at the trial.

Inside the poolroom defendant felt Hudson's pockets for weapons then ordered him to empty the contents of his pockets onto the floor. Hudson complied in the presence of several patrons of the poolroom, none of whom were called as witnesses. Among the items Hudson placed on the floor were a key case, seven dollars in bills and sixty

cents in change, and a cigarette lighter shaped like a camera. Hudson testified that defendant then picked up the money and the lighter and put them in his pocket, but defendant denied that this was so. Both men agreed, however, that two policemen, who had been summoned by a passerby, entered the poolroom at this point. Defendant identified himself as a policeman to the two officers and, after some discussion during which the "other fellow" was told he could leave, the two officers departed apparently satisfied that nothing was amiss and that Hudson had been rightfully taken into custody.

After the departure of the officers, defendant said he examined Hudson's property and returned the money, but retained the cigarette lighter because he was curious about it and wanted to ascertain if it contained narcotics or obscene pictures. Hudson asked if he could go, defendant replied that he could and, according to defendant, they walked along the street together at which time he told Hudson that he could be arrested for using obscene language on the street, and that he could have the lighter back if he would assure defendant there was nothing illegal inside of it. By Hudson's version, however, defendant ordered him to walk along the street and followed a step behind with his hand in a pocket where he was carrying a pistol. He said that after walking a short way, defendant threatened him with retaliation if he, Hudson, should be instrumental in getting defendant fired from his job. At this juncture Hudson said he told defendant to keep the seven dollars, but that the latter refused and returned the money to him at that time, after which they continued to walk up the street.

A police squad car, which was answering a call that there had been a man in the poolroom with a gun, arrived at the scene about this time. These officers, who testified that Hudson was terrified and clutching some money in his hand, disarmed the defendant and took the men to a police station. There the camera-shaped cigarette lighter was

found in defendant's pocket, a circumstance he explained by saying he had left it there as he reached for his badge in order to show it to the officers in the squad car. According to defendant, Hudson at no time complained that he had been robbed but, approximately a month later, defendant was indicted for armed robbery.

The crime of robbery is defined by the Criminal Code as "the *felonious* and violent taking of money, goods or other valuable thing, from the person of another by force or intimidation." (Ill. Rev. Stat. 1959, chap. 38, par. 501, emphasis supplied.) The word "felonious" has at times been defined as meaning "malicious," "malignant," or "wrongful" and when used in a statute has been said to be synonymous with "criminal." (See: 36A C.J.S., pp. 254-255.) This court has said that an act done feloniously is done with the deliberate purpose of committing a crime, (*People* v. *Falkovitch,* 280 Ill. 321, 324,) and that as employed in our criminal laws the term felonious has its "ordinary meaning" of manifesting a criminal purpose. (*People* v. *Connors,* 301 Ill. 112, 116.) As the term "felonious" is used in the robbery statute, therefore, it would appear to be a necessary element of the crime that the taking was with a criminal purpose. Cf. *People* v. *Erlandson,* 360 Ill. 214.

In accordance with general rules, the People have the burden of proving the elements of the offense of robbery, and the guilt of the accused beyond a reasonable doubt. (*People* v. *Sanders,* 357 Ill. 610; *People* v. *Peck,* 358 Ill. 642.) On review, a judgment of conviction can be sustained only on credible evidence which removes all reasonable doubt of a defendant's guilt, and where the evidence of the prosecution is improbable, unconvincing and contrary to human experience, we will not hesitate to reverse a judgment of conviction. *People* v. *Dawson,* 22 Ill.2d 260; *People* v. *Coulson,* 13 Ill.2d 290; *People* v. *Buchholz,* 363 Ill. 270.

The defendant's conduct is difficult to understand, and certainly deviates widely from that to be expected of a competent police officer. Nevertheless, we think that the evidence does not establish beyond a reasonable doubt that he was guilty of the crime of armed robbery.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*