THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRIAN BAILEY, Defendant-Appellant.
Fourth District   No. 4—92—0332

Opinion filed September 30, 1992.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a bench trial in the circuit court of Champaign County, defendant was found guilty of indirect criminal contempt for violating an order of protection by allegedly having contact with his ex-wife, Terri Bailey. Defendant served 32 days of a 90-day sentence imposed by the trial court before posting an appeal bond. Defendant contends he was not proved guilty beyond a reasonable doubt and, in the alternative, the trial court erred in denying credit for good behavior in the sentence imposed.

On October 9, 1990, a plenary order of protection was filed ordering defendant to, among other things, refrain from physically abusing, intimidating, willfully depriving, threatening, harassing, or interfering with the personal liberty of his ex-wife. Defendant was further ordered to have "'no contact with Terri Bailey." The order was set to expire on October 9, 1992. On January 2, 1991, defendant pleaded guilty to violating this order and was sentenced to 12 months' conditional discharge. Later, on February 27, 1991, he again pleaded guilty to violating the protective order. He was sentenced to 12 months' conditional discharge and required to attend anger control counseling. On July 11, 1991, he was convicted of violating this same protection order and fined $200.

The present action was filed on December 6, 1991, alleging that defendant violated the protection order when he attempted to talk to his ex-wife while she was in a parking lot on November 22, 1991. The facts are as follows.

Terri Bailey and her boyfriend, Mike Padilla, pulled into the parking lot of a bar in Rantoul just as defendant was about to drive out. According to defendant and his girlfriend, Padilla began flashing his

headlights and yelling at defendant as their cars passed each other. Both Padilla and Terri claim that defendant was the one yelling. They drove past defendant and parked their truck. At this point, defendant put his car into reverse and backed into the lot, stopping only when his car was blocking the truck occupied by Padilla and Terri. Padilla's truck was apparently not trapped, as it was possible for them to back out of their spot if they wished.

Defendant claims he pulled back to Padilla's truck, rolled down his window, and asked Padilla what his problem was. He claims Padilla came after him, apparently calling him out to fight. Defendant got out of his car and offered to shake hands with Padilla, who responded by shoving him. Soon, they both began to push and shove. Testimony regarding who hit whom or who started the fight is conflicting. Terri stayed in the truck. Defendant allegedly climbed back into his car and tried to run over Padilla. Both men accuse each other of spitting on each other's vehicles.

At some point, Terri climbed out of the truck and claims defendant said to her, "I'm sorry, Terri, you have a fucked up boyfriend." Padilla confirmed this testimony, while defendant and his girlfriend deny that he said anything to Terry. The only independent witness, Carrie Sahy, testified that defendant was leaving the lot as Padilla and Terri were driving in. She did not see the altercation begin but, after it started, she went over to assist defendant's girlfriend, who was trying to get defendant back into his car. Sahy claims she asked Terri to get Padilla back in his truck, but Terri replied, "No." Terri claims she did not respond to Sahy at all. Sahy does not know if defendant ever spoke with Terri.

Despite the conflicting testimony and the apparent separate interests of the parties, the court isolated a number of decisive factors. When defendant saw Padilla's truck entering the parking lot, he knew Terri was in that truck. If defendant, who was in the process of leaving the parking lot anyway, had just kept going, the confrontation would never have happened. The same trial judge presided over defendant's conviction on charges of contempt for violating this protective order just six months earlier. At that time, the trial judge informed him that he was to have no contact with his ex-wife. Even if they met accidentally, the burden would fall upon him to get away from her. The court held, in the instant case, that proof of defendant's alleged comments made to his ex-wife was unnecessary for a finding that he had willfully and contumaciously violated the order of the court. Driving his car up to the vehicle which Terri occupied, blocking its path, and spitting on its windshield was sufficient evi-

dence of a violation of the court's order, regardless of the fact that his actions were directed toward her companion.

Whether a party is guilty of criminal contempt is a question of fact for the fact finder and the burden of proof is beyond a reasonable doubt. (*In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 58, 558 N.E.2d 404, 425.) A reviewing court will not disturb the finding unless it is against the manifest weight of the evidence. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 286-87, 469 N.E.2d 167, 176.) Whether, and on what grounds, to punish the contemnor rests within the sound discretion of the trial court. (*In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 1079, 519 N.E.2d 1147, 1149.) Defendant was found to have violated paragraph 10 of the court's protective order, which mandates that he is to have no contact with Terri. When he pulled his auto in front of the vehicle occupied by Terri and then confronted her companion, he violated the court order. We find the court has not abused its discretion in finding that defendant willfully and contumaciously violated the order of the court.

Next, defendant contends the trial court erred when it refused to allow credit for good behavior on the 90-day sentence of imprisonment. Section 3 of the County Jail Good Behavior Allowance Act (Act) states, in relevant part:

"The good behavior of any person who commences a sentence of confinement in a county jail for a fixed term of imprisonment *** shall entitle such person beginning on the date of sentence to a good behavior allowance ***. The good behavior allowance provided for in this Section shall not apply *** to individuals sentenced under an order of court for civil contempt." Ill. Rev. Stat. 1991, ch. 75, par. 32.

Defendant was convicted of indirect criminal contempt, not civil contempt. Sanctions for criminal contempt are retrospective in nature; they seek to punish a contemnor for past acts which he cannot now undo. (*Betts*, 200 Ill. App. 3d at 46, 558 N.E.2d at 417.) The reasons for imposing punishment for criminal contempt are much the same as the rationale for punishing other types of misdemeanor criminal conduct—retribution, deterrence, and vindication of the norms of socially acceptable conduct. *Betts*, 200 Ill. App. 3d at 44, 558 N.E.2d at 416.

In contrast, sanctions for civil contempt are prospective in nature; they seek to coerce compliance at some point in the future. (*Betts*, 200 Ill. App. 3d at 46, 558 N.E.2d at 417.) The contemnor holds the power to release himself as soon as he complies with the court's order. Allowing credit for good behavior toward a sentence imposed for

civil contempt would effectively undermine the fundamental purpose of the sanction. Accordingly, we find a distinct legislative purpose in the exclusion of civil contempt actions from the Act. No such legislative purpose exists for the exclusion of criminal sanctions. Defendant is entitled to his good behavior allowance.

The State maintains the issue has been waived by defendant's failure to object at trial or in his post-trial motion. Our court has held that sentence credit for time served is a right afforded by statute and failure to present the issue to a trial court, either by contemporaneous objection or by post-sentencing motion, does not waive this issue. (*People v. Donnelly* (1992), 226 Ill. App. 3d 771, 779, 589 N.E.2d 975, 980.) Similarly, we find the good behavior allowance is a right afforded by statute which cannot be waived by a failure to object at trial or in a post-trial motion. The fact that the legislature did not include criminal contemnors among those excluded from the Act indicates that the trial court was without authority to deny that credit.

Affirmed in part; reversed in part.

KNECHT and COOK, JJ., concur.