THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EMIL J. STILES, Defendant-Appellant.

First District (5th Division)   No. 1—00—2153

Opinion filed November 1, 2002.

REID, J., dissenting.

Tom Makedonski, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica Calderon Malavia, and Heather Weiss, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a bench trial, defendant Emil J. Stiles (Stiles) was found guilty of violating an order of protection (720 ILCS 5/12—30 (West 2000)) issued to Jane Meredith Leggett (Leggett) and sentenced to 18 months' supervision, 10 days in the Sheriff's Work Alternative Program (SWAP) and fined $150. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt. For the following reasons, we affirm.

## THE FACTS

At trial, Leggett testified that she and Stiles began dating in December 1998 and lived together until December 1999. On January 6, 2000, Leggett obtained a temporary emergency order of protection against defendant. The order provided that defendant was not to physically abuse, harass, stalk, interfere with Leggett's personal liberty, or have contact with Leggett by any means.

Defendant testified that he went to 28 North Clark Street to obtain an order of protection against Leggett on January 11, 2000. That day, defendant completed the paperwork to obtain an order of protection against Leggett and requested that Kelly's Pub be named as a protected location because he was planning to seek employment there. However, the hearing on his order was not held until the following day, on January 12, 2000.

Defendant testified that after completing the paperwork, a court clerk informed him that an order of protection had been obtained some days earlier by Leggett. Based on that information, defendant stated that he went to the Daley Center, where he was served with Leggett's order of protection. However, defendant had previously indicated in the paperwork for his order of protection that there was no other action pending between himself and Leggett. On January 12, the defendant failed, either orally or in his written petition, to inform the court of the existence of Leggett's order.

On the night of January 20, 2000, Leggett was at Kelly's Pub, located at 959 West Webster Avenue in Chicago, Illinois, with her friends George Panothiocas and Greg Sochacki. Leggett testified that the defendant walked into the tavern and upon seeing her screamed "son of bitch." Defendant then said, "Hi, Jane Meredith. Hi Meredith. What are you doing here? What's up?" The defendant was standing approximately 10 feet from Leggett.

Leggett said that the defendant continued to speak to her, still saying things like "How are you doing?" and "What are you doing here?" Defendant then said to Panothiocas, "So, I see you made a new friend." Neither Leggett nor Panothiocas responded to defendant.

Leggett further testified that defendant told her, "I'm going to get you kicked out of here. Just watch." Defendant then went to a public telephone where she overheard him call the police and tell the police that he had a restraining order against her, she was on the premises, and she needed to be removed. When the police arrived, Leggett showed them her order of protection against defendant, and the police informed her that defendant had an order of protection against her as well. When Leggett told the police she had not been served with defendant's order, they told her to consider herself served. The police then told her that defendant was in violation of her order of protection and would be removed from the tavern.

Panothiocas testified that he, Leggett and Sochacki had been at Kelly's Pub for approximately an hour when the defendant entered the bar. When defendant entered he "made some kind of derogatory comment." Panothiocas stated that he thought defendant said, "son of a bitch or all s---." Panothiocas said that he did not believe that the comment was directed at Leggett but instead was a general comment that the defendant made upon seeing Leggett. Defendant then said, "you should not be here" and "you have to leave." Defendant then "walked to the end of the bar. He took a seat, [and] made a comment to me." The defendant said, "have you found a new friend?" Panothiocas did not respond. Panothiocas stated that the defendant said, "watch this." The defendant then spoke to a couple of guys at the end of the bar and called the police, who arrived shortly thereafter.

Sochacki testified that when the defendant walked into the bar, he made a comment after seeing Leggett. Sochacki said that he thought the defendant said, "god damn it or Jesus Christ or son of a bitch." Defendant then walked to the end of the bar. Sochacki said that there were some verbal exchanges, none of which he could discern. Sochacki stated that Leggett did not reply. The defendant then said that he was going to call the police, and he requested the phone number or the telephone book and made a phone call. While they were waiting, defendant asked Panothiocas "did you make a new friend or have you made a new friend or something like that." The police arrived next.

Defendant testified that he had been a "regular" at Kelly's Pub for several years before, during and after his relationship with Leggett. Defendant testified that on the evening of January 20, 2000, when he saw Leggett at Kelly's Pub, he informed Leggett of his order of protection against her and told her that she should leave the tavern,

believing that his order meant that he could go to Kelly's Pub but Leggett could not. Defendant then called the police. Defendant denied uttering an expletive upon seeing Leggett or going near her in the tavern.

In finding defendant guilty, the court stated that defendant's order of protection had been fraudulently obtained and that defendant had violated Leggett's order of protection. The court specifically stated that the case "really comes down to a matter of the documents. *** The order of protection obtained by Ms. Leggett *** indicates no contact by any means."

The trial court entered a finding of guilty on May 30, 2000. Stiles timely filed this appeal.

## ANALYSIS

Stiles argues that the State failed to prove that he violated Leggett's order of protection beyond a reasonable doubt. Stiles asserts that he did not possess the requisite intent to violate Leggett's order of protection because he mistakenly believed that his order of protection allowed him to remain in Kelly's Pub.

■ "[T]he State carries the burden of proving beyond a reasonable doubt each element of the offense and the defendant's guilt." *People v. Maggette*, 195 Ill. 2d 336, 353 (2001), citing *People v. Ware*, 23 Ill. 2d 59, 62 (1961). A reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. When considering the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, the relevant question is whether, after reviewing all of the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. *Maggette*, 195 Ill. 2d at 353.

■ It is well settled that when a case is tried without a jury, it is the responsibility of the trial judge to determine the credibility of the witnesses and weight to be given their testimony, and where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact who heard the evidence. *People v. Anderson*, 325 Ill. App. 3d 624, 634 (2001).

■ "A person violates an order of protection of which he has notice when he commits an act prohibited by a court in a valid order of protection." *People v. Priest*, 297 Ill. App. 3d 797, 800-01 (1998), citing *People v. Gee*, 276 Ill. App. 3d 198, 200 (1995). "The common law recognized that a crime required both *actus reus*, a guilty act, and *mens rea*, a guilty mind, and, with the exception of certain absolute li-

ability offenses, the Criminal Code of 1961 (the Criminal Code) (720 ILCS 5/1—1 *et seq.* (West 2000)) retains this distinction. Compare 720 ILCS 5/4—1 (West 2000) ('Voluntary Act') with 720 ILCS 5/4—3 (West 2000) ('Mental State')." *People v. Mandic*, 325 Ill. App. 3d 544, 547 (2001). Here, the State was required to prove that: (1) defendant committed an act prohibited by an order of protection or failed to perform an act required by an order of protection, and (2) defendant had been served notice of or otherwise acquired actual knowledge of the contents of the order. *Mandic*, 325 Ill. App. 3d at 547, citing 720 ILCS 5/12—30(a) (West 2000).

▪ It is undisputed that defendant had notice of Leggett's order of protection. The question for the trial court was whether defendant committed an act prohibited by Leggett's order of protection. Leggett's order of protection clearly stated that "Respondent is further ordered and/or enjoined as follows: NO CONTACT BY ANY MEANS." As to the incident in question, Leggett, Panothiocas and Sochacki all testified that when defendant saw Leggett he used profanity and then he spoke to her. Defendant's actions constituted a violation of the order of protection's provision that he was to have "no contact by any means" with Leggett.

In *People v. Mandic*, 325 Ill. App. 3d 544, this court affirmed the defendant's conviction for violating an order of protection which provided that he was to "stay away" from his ex-wife and their children. The defendant violated the order of protection by going to the church that his ex-wife and their children attended. The defendant knew they would be there and the trial court found that defendant had physical contact with his children at the church. *Mandic*, 325 Ill. App. 3d at 549. "Whether a defendant who is otherwise lawfully present in a public place comes within sufficient proximity of a protected person who is also present there to constitute a violation of a stay-away order will depend on a variety of factors. See *Bailey*, 167 Ill. 2d at 229. A court should consider factors including, but not limited to, the size of the public area, the total number of people present, the defendant's purpose for being present, the length of time, and when the defendant knew or should have known that a protected party would be present." *Mandic*, 325 Ill. App. 3d at 549.

In *People v. Bailey*, 235 Ill. App. 3d 1, 2 (1992), this court affirmed the defendant's conviction for violating an order of protection which provided that the defendant was to have "no contact with Terri Bailey." After reviewing the language of the order of protection, this court affirmed the defendant's conviction and rejected his defense that he had a right to be in the parking lot where he exchanged words with his ex-wife and her boyfriend. "Even if they met accidentally, the

burden would fall upon him to get away from her. \*\*\* When he pulled his auto in front of the vehicle occupied by Terri and then confronted her companion, he violated the court order." *Bailey*, 235 Ill. App. 3d at 3-4. Applying the holdings in *Mandic* and in *Bailey* to the facts in the instant case, it is abundantly clear that defendant violated Leggett's order of protection.

Defendant argues that he should not have been found guilty because he was acting pursuant to a valid order of protection which prohibited Leggett from entering or remaining at Kelley's Pub, a tavern defendant frequented. We disagree. Section 12—30(a) of the Criminal Code provides in part: "There shall be a presumption of validity where an order is certified and appears authentic on its face." 720 ILCS 5/12—30(a) (West 2000). However, section 215 of the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) provides:

> "Mutual orders of protection are prohibited. Correlative separate orders of protection undermine the purposes of this Act and are prohibited unless both parties have properly filed written pleadings, proved past abuse by the other party, given prior written notice to the other party unless excused under Section 217, satisfied all prerequisites for the type of order and each remedy granted, and otherwise complied with this Act. In these cases, the court shall hear relevant evidence, make findings, and issue separate orders in accordance with Sections 214 and 221. The fact that correlative separate orders are issued shall not be a sufficient basis to deny any remedy to petitioner or to prove that the parties are equally at fault or equally endangered." 750 ILCS 60/215 (West 2000).

The defendant secured his order of protection in violation of section 215 of the Domestic Violence Act. See *In re Marriage of Gordon*, 233 Ill. App. 3d 617, 648 (1992). The trial court in the instant case specifically stated: "I find the order of protection was fraudulently obtained by Mr. Stiles." While section 12—30 of the Criminal Code provides that orders are presumed to be valid when they are certified and appear authentic on their face, this presumption may be overcome, as the trial court in the instant case found. Assuming *arguendo* that Stiles' order of protection was valid even though it was fraudulently obtained and not served upon Leggett, the existence of that order in no way voided Leggett's order of protection, which provided that Stiles was to have "no contact by any means" with Leggett. If defendant wished to enforce the proscription in his order of protection barring Leggett from defendant's favorite tavern, defendant should have gone directly to a phone and called the police to remove Leggett. Defendant was not free to violate the provisions of Leggett's order of protection.

For the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

GREIMAN, J., concurs.

JUSTICE REID, dissenting:

I disagree with the majority's conclusion that Stiles violated Leggett's order of protection. In my humble opinion, Stiles did not violate Leggett's order of protection because he lacked the required *scienter*. Since violating an order of protection is not a strict liability offense (*Mandic*, 325 Ill. App. 3d at 548), the question for this court is whether the defendant possessed the requisite intent to be found guilty beyond a reasonable doubt.

Section 12—30 states: "There shall be a presumption of validity where an order is certified and appears authentic on its face." 720 ILCS 5/12—30 (West 2000). Further, section 215 provides:

> "Mutual orders of protection are prohibited. Correlative separate orders of protection undermine the purposes of this Act and are prohibited unless both parties have properly filed written pleadings, proved past abuse by the other party, given prior written notice to the other party unless excused under Section 217, satisfied all prerequisites for the type of order and each remedy granted, and otherwise complied with this Act. In these cases, the court shall hear relevant evidence, make findings, and issue separate orders in accordance with Sections 214 and 221. The fact that correlative separate orders are issued shall not be a sufficient basis to deny any remedy to petitioner or to prove that the parties are equally at fault or equally endangered." 750 ILCS 60/215 (West 2000).

Here, the defendant had what he believed to be a valid order of protection. At the hearing held on January 12, 2000, Stiles should have informed the trial judge that the paperwork for his order of protection needed to be amended. The defendant should have informed the trial judge that since the time he had initially filled out the paperwork for his order of protection, he had come to learn of the existence of Leggett's order of protection. This was not done.

Stiles was a layman and not an experienced attorney. It would not be appropriate to hold a layman to the same standards as an attorney. It does not appear that Stiles attempted to fraudulently obtain his order of protection. When he initially filled out the forms for his order of protection, the defendant provided truthful information. However, the defendant was unable to appear before a judge.

The next day at the hearing, Stiles failed to inform the court that he had learned of Leggett's order of protection. This omission did not appear to be intentional but, rather, the mistake of a layman. Had the court questioned him and he then gave an untrue answer, this would be a different case.

Situations like this, where individuals basically race to the courthouse to acquire *ex parte* orders of protection, are not uncommon. At the hearing held on January 12, the trial judge should have asked the defendant from the bench if Leggett held a separate order of protection against him. This simple question from the judge would have prevented this situation from occurring. There needs to be an administrative measure taken by trial courts to prevent events like this from happening. Here, because Leggett had only just come to the courthouse six days earlier to get an order of protection, the court clerk remembered her name and related this information to Stiles. Why is this important information not available to the judge who is issuing the orders of protection? Had this occurred, only one order of protection would have been issued instead of two.

When defendant entered Kelly's Pub, he possessed an order of protection that prohibited Leggett from being there. Even if that order was voidable, it was valid until a judge vacated it. Stiles believed that he could rightfully remain at Kelly's Pub. The defendant told Leggett that she could not be there based on his order of protection and then he called the police. Under these undisputed facts, the defendant did not violate the Leggett order of protection because he did not have the requisite *scienter*.

For the foregoing reasons, therefore, I respectfully dissent.