NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 13, 2013[*]
Decided June 19, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 12-2122

| | |
|---|---|
| B. MICHAEL SCHNEIDER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 08 C 3054 |
| COUNTY OF WILL, ILLINOIS, et al., | |
| *Defendants-Appellees.* | Robert W. Gettleman |
| | *Judge.* |

**O R D E R**

Michael Schneider spent 20 days in jail after a judge in Will County, Illinois, held him in criminal contempt. In this lawsuit he claims under 42 U.S.C. § 1983 that the county sheriff and the jail warden should have released him after 10 days and, by holding him longer, violated the Eighth Amendment. Schneider also claims under Illinois law that the defendants intentionally caused him emotional distress by assigning him to a poorly

---

[*]This successive appeal has been submitted to the original panel under Operating Procedure 6(b). After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

ventilated cell with an ill and talkative child molester. Schneider anticipates that Will County will indemnify the sheriff and warden, so the county is named as a third defendant. *See* 28 U.S.C. § 1367(a); *Coles v. City of Chicago*, 361 F.Supp.2d 740, 746 n.5 (N.D. Ill. 2005) ("[I]t is common, and indeed advisable, for a plaintiff who expects a public entity to indemnify a Section 1983 judgment to add that entity as a defendant on the indemnity claim during the pendency of the Section 1983 case.").

The district court initially accepted the premise, made in a motion to dismiss, that the sheriff and warden simply had carried out instructions from the judge and thus shared the judge's absolute immunity. On that basis the court dismissed the Eighth Amendment claim and declined to exercise supplemental jurisdiction over Schneider's state-law claim. We overturned that decision and remanded for further proceedings. *Schneider v. Cnty. of Will*, 366 F. App'x 683 (7th Cir. 2010). Not only did we conclude that quasi-judicial immunity is a defense too steeped in facts for resolution on a motion to dismiss, but we also expressed skepticism that the sheriff or warden could enjoy absolute, rather than qualified, immunity. On remand, after a year of discovery, the district court granted summary judgment for the defendants. This time the court reasoned that Schneider lacks evidence tying the sheriff to the decision to keep him jailed, that quasi-judicial immunity indeed shields the warden from liability, and that both men are immune from Schneider's state-law claim under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 to 10-101. Schneider again appeals. We conclude that disputed issues of material fact foreclose the grant of summary judgment for the warden and county on Schneider's constitutional claim, and thus we vacate the judgment in part and remand for trial.

The following factual account is drawn from the evidence at summary judgment, which we review in the light most favorable to Schneider. *See Foskett v. Great Wolf Resorts, Inc.*, 518 F.3d 518, 522 (7th Cir. 2008). In May 2007, Schneider attended a hearing in the Circuit Court of Will County during a lawsuit to foreclose the mortgage on his fiancée's home. The presiding judge, James Garrison, held Schneider in contempt of court after he disrupted the proceeding and attempted to file several frivolous motions on behalf of his fiancée. The court sent a contempt mittimus to Paul Kaupas, the county sheriff, directing him to take Schneider into custody and hold him for 20 days or "until released by process of law." There is no evidence that the sheriff himself read the mittimus.

Twelve days into his sentence, Schneider delivered (through his fiancée) a letter to Michael O'Leary, the warden of the Will County Adult Detention Facility. Schneider's conduct in jail had been satisfactory, and thus, he asserted, he should have been released after 10 days because the County Jail Good Behavior Allowance Act, 730 ILCS 130/3, mandates day-for-day credit for good behavior. Sheriff Kaupas also received a copy of this

letter and faxed it to Warden O'Leary after concluding that O'Leary was best situated to address Schneider's concern.

Warden O'Leary took action by seeking advice from Mary Niemann, the supervisor responsible for managing records and calculating release dates for prisoners. During a discovery deposition, O'Leary testified that, according to Nieman, judges in Will County do not want prisoners in the jail to receive credit for good behavior unless approval is noted on the mittimus, which Judge Garrison had not done. O'Leary wanted more assurance, he explained, so he told Niemann to contact the judge for confirmation. She told him later, O'Leary insisted, that she had contacted "the court" and confirmed that Schneider was supposed to serve the full 20 days. At her deposition, however, Niemann did not remember contacting the court, though she vaguely recalled O'Leary instructing her to call Judge Garrison. After communicating with Niemann, O'Leary sent Schneider (and Sheriff Kaupas) a letter stating that the credits for good behavior did not apply—the letter does not mention any communication with the court—and Schneider remained jailed for a total of 20 days.

On appeal Schneider challenges the dismissal of his federal and state claims as against both Sheriff Kaupas and Warden O'Leary. We can dispense quickly with the sheriff and with Schneider's emotional distress claim. On this record a jury could not conclude that the sheriff was deliberately indifferent to the possibility that Schneider was being held unlawfully; after receiving Schneider's letter, Kaupas delegated the matter to O'Leary, an act that he reasonably could have expected to resolve the problem. *See Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006) (discussing elements of deliberate indifference claim in context of unlawful incarceration); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (referring medical grievance to doctor is not deliberate indifference). Neither could a jury find for Schneider on his claim for intentional infliction of emotional distress: Not only is that claim frivolous in light of Schneider's failure to show the defendants' personal involvement in selecting his cellmate, *see Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988), but under Illinois law both Kaupas and O'Leary are absolutely immune from supervisory liability under Illinois' Local Governmental and Governmental Employees Tort Immunity Act, *see* 745 ILCS 10/4-103; *see also Payne v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998).

More difficult is the Eighth Amendment claim against Warden O'Leary. Although we signaled in our previous decision that quasi-judicial immunity seemed an ill fit for this case, the district court nevertheless relied on that ground in dismissing this claim against the warden. That reliance was mistaken. As an initial matter, we note that O'Leary himself did not rely on quasi-judicial immunity in moving for summary judgment, and it was error for the district court to invoke that defense sua sponte without even inviting Schneider to respond. *See Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005); *Older Inst., Inc. v. Forde*,

333 F.3d 832, 836 (7th Cir. 2003). More importantly, the record does not support application of the defense.

The reach of quasi-judicial immunity is limited. *Forrester v. White*, 484 U.S. 219, 224 (1988); *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001). Our previous decision explains that a prisoner's accusation that jailers "failed to give proper credit for time served is not an attack on the judge's sentence, but on the manner of executing that sentence." *Schneider*, 366 F. App'x at 685. Thus, we observed, situations where administrators confined a prisoner beyond the expiration of his sentence "typically involve qualified, not absolute, immunity." *Id*. at 685–86.

Warden O'Leary never spoke with Judge Garrison, and we have never held that indirect instructions like those "the court" purportedly relayed to O'Leary though Niemann can confer absolute immunity. *See Dunn v. City of Elgin, Ill.*, 347 F.3d 641, 648 (7th Cir. 2003) ("Illinois police officers are simply required to look for some indicia of authority from an Illinois court before enforcing an order."); *see also Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) (reviewing immunity conferred by strict compliance with written custody order); *Richman v. Sheahan*, 270 F.3d at 433, 436 (reviewing immunity conferred by judge's spoken orders to bailiffs); *Moss v. Kopp*, 559 F.3d 1155, 1167 (10th Cir. 2009) (immunity conferred by written order). In fact, on this record a jury could not reasonably find that Niemann spoke with the judge directly rather than to court staff (if she spoke to anyone at all). Moreover, O'Leary does not, and cannot, assert that he simply executed a routine, unambiguous mittimus from Judge Garrison. A mittimus instructing jailers to hold a prisoner for a specific term unless "released by process of law" is ambiguous or, much worse for O'Leary, a directive to *comply* with the County Jail Good Behavior Allowance Act. The case is reminiscent of *Hernandez*, where we held that even though the defendant-jailors had been ordered by a court to take custody of the plaintiff, that order did not immunize them against the plaintiff's claim that they ignored his repeated pleas of mistaken identity because the order did not specifically forbid them from investigating such pleas. 455 F.3d at 776. The warden deemed the mittimus ambiguous, which is why he sought guidance from Niemann. And though O'Leary perhaps could have asserted *qualified* immunity, he waived that defense by ignoring our suggestion that it be explored on remand. *See Merritt v. Broglin*, 891 F.2d 169, 171 n.4 (7th Cir. 1989); *Walsh v. Mellas*, 837 F.2d 789, 799 (7th Cir. 1988).

The warden's fallback position is no better. He argues that a jury could not reasonably find that his response to Schneider's correspondence constituted deliberate indifference. According to O'Leary, he did enough by asking Niemann to investigate Schneider's entitlement to good time and then later confirming that she had spoken with "the court." The latter point cannot help him at summary judgment: When Niemann was deposed she did not recall relaying instructions from Judge Garrison or even contacting the

court, leaving the jury to disbelieve O'Leary's story that Niemann had confirmed the judge's directive that Schneider serve all 20 days. Also fueling that negative inference is the absence of support for O'Leary's account from the judge, as well as O'Leary's failure to mention Niemann's purported contact with Judge Garrison in his letter to Schneider.

A jury would not have reason to doubt Niemann's testimony that Warden O'Leary asked her for advice on how to proceed, but that conversation does not obviate the need for a trial. A jailer is deliberately indifferent when he does nothing, *Armstrong v. Squadrito*, 152 F.3d 564, 580 (7th Cir. 1998); *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1985) (en banc), or when he takes action that is so inept or ineffectual that deliberate indifference can be inferred, *Burke*, 452 F.3d at 669; *Moore v. Tartler*, 986 F.2d 682, 687 (3d Cir. 1993); *see also Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (noting that a prison doctor demonstrates deliberate indifference by pursuing treatment so "blatantly inappropriate as to evidence intentional mistreatment"). Seeking legal advice, *see Dahl v. Weber*, 580 F.3d 730, 734 (8th Cir. 2009), or asking a judge for written clarification, *see Moore*, 986 F.2d at 687, are reasonable steps that preclude finding deliberate indifference, but O'Leary did neither. Niemann is not a lawyer, and although O'Leary easily could have contacted the local state's attorney for advice, *see* 55 ILCS 5/3-9005(a)(7), he did not. (O'Leary did send the state's attorney a copy of his letter to Schneider, but that was on June 11, 2007, at the earliest—only two days before Schneider's miscalculated release date.)

Further evidence of deliberate indifference is Warden O'Leary's unquestioning acceptance of Niemann's interpretation of the mittimus. She told O'Leary that Judge Garrison did not want Schneider to be given credit for good behavior since the mittimus does not affirmatively say to award him credit, but judges in Illinois have no power to deny or rescind credit for good behavior, which for prisoners confined in county jails is a statutory right under state law. *See People v Whitmore*, 728 N.E.2d 1267, 1270 (Ill. App. Ct. 2000), *People v. Bailey*, 600 N.E.2d 1267, 1269 (Ill. App. Ct. 1992). A cursory examination of the statute Schneider cited in his letter would have raised suspicions, even in the mind of a layman, that Niemann had misinterpreted the mittimus. A jury reasonably could conclude that O'Leary's chosen course of action—continuing Schneider's imprisonment based on a layperson's dubious evaluation of Schneider's legal concern—was so deficient as to constitute deliberate indifference, and we remand for trial on that question. Schneider's indemnity claim against Will County will join it on remand. *See Wilson v. City of Chicago*, 120 F.3d 681, 683–85 (7th Cir. 1999); *Coles*, 361 F.Supp.2d at 746 n.5.

Schneider's remaining contentions are without merit and do not warrant discussion. The order granting summary judgment for Warden O'Leary on Schneider's claim under the Eighth Amendment and Will County under state indemnification law is VACATED, and

the case is REMANDED for trial on those claims. In all other respects the judgment is AFFIRMED.