# Illinois Official Reports

## Appellate Court

*In re Marriage of Kiferbaum*, 2014 IL App (1st) 130736

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JUDITH KIFERBAUM, Petitioner-Appellant, and HANAN KIFERBAUM, Respondent-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-13-0736 |
| Filed | September 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings that resulted in the trial court granting respondent's petition for an order of protection under the Illinois Domestic Violence Act and then dismissing petitioner's request for an order of protection on the ground that the Act prohibits mutual orders of protection, the appellate court reversed the dismissal of petitioner's request, since she was seeking a correlative separate order of protection, not a mutual order of protection, and although correlative separate orders of protection are not favored, they are allowed if certain requirements are met, and petitioner satisfied those requirements by filing a separate petition, commencing a separate action, filing a written petition, providing notice to all parties, and being prepared to present separate proof supporting her petition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-D-577; the Hon. Naomi Schuster, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded for further proceedings. |

Counsel on
Appeal

Jan R. Kowalski, of Chicago, for appellant.

No brief filed for appellee.


Panel

PRESIDING JUSTICE SIMON delivered the judgment of the court, with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    On January 23, 2009, petitioner Judith Kiferbaum (Judith) filed the underlying petition for dissolution of marriage from her husband, respondent Hanan Kiferbaum (Hanan). Judith also sought, and was granted, a temporary order of protection on January 23, 2009, and a plenary order of protection on February 4, 2009. With respect to the parties' abusive behavior toward each other, the parties' agreed disposition order of June 8, 2009, also restricted contact between the parties. On March 17, 2010, judgment for dissolution of marriage was entered with the issue of maintenance remaining open.

¶ 2    On June 21, 2012, Judith sought an emergency order of protection against Hanan that was granted and set for further hearing on July 12, 2012. However, that petition was dismissed on July 12, 2012. Also on that date, after the petition was dismissed, Hanan filed an emergency petition for an order of protection against Judith. The trial court found that the petition was not an emergency and set the matter for further hearing. On July 20, 2012, Judith filed a petition for an emergency order of protection that was denied for lack of personal knowledge of Hanan's alleged conduct. On July 31, 2012, Judith filed the underlying petition for an order of protection.

¶ 3    An agreed order restraining and enjoining Judith and Hanan from certain locations was entered, the petitions were continued to allow discovery, and the court set a November 30, 2012, hearing date on the "cross petitions for order of protection." The matter was continued to January 30, 2013, when the trial court granted Hanan's petition for an order of protection and set argument for Hanan's motion to dismiss Judith's amended petition for an order of protection on February 5, 2013. On February 5, 2013, the trial court granted Hanan's motion to dismiss, finding that the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2010)) does not permit mutual orders of protection.

¶ 4    Judith argues on appeal that the trial court erred in construing section 215 of the Illinois Domestic Violence Act (750 ILCS 60/215 (West 2010)) in dismissing Judith's petition. Judith also contends that the trial court abused its discretion in granting Hanan's petition. For the following reasons, we affirm the judgment of the trial court as to the grant of Hanan's petition for a protective order and reverse the dismissal of Judith's petition for a protective order.

- 2 -

## I. BACKGROUND

Judith and Hanan were married on January 17, 1988, and the marriage was registered in Haifa, Israel. The parties resided in Skokie, Illinois, and had one child under the marriage, born on June 25, 1988. On January 23, 2009, citing irreconcilable differences, Judith filed the underlying petition for dissolution of marriage from Hanan. Judith also filed a petition for an order of protection, a third-party complaint against respondent's business and banking entities, an emergency *ex parte* petition for a temporary restraining order, preliminary injunction, and other relief, and a petition for interim prospective attorney fees and costs against Hanan.

Judith presented an affidavit in support of her petition for an order of protection, testifying to Hanan's behavior toward Judith at various dates in the prior year that exhibited escalating and repeated abuse and harassment such that Judith feared for her personal safety. Judith averred that Hanan repeatedly yelled at her, telling her that she must follow his rules, and that if she did not comply with his rules and demands he would "screw [her] completely," humiliate her to her friends and employers, and leave her penniless. Judith also detailed occurrences where Hanan demanded that Judith perform oral sex or she would be responsible for "a bad situation." Judith testified that for fear of what Hanan might do, she complied with his demand each time while crying throughout the ordeal. Judith also detailed times where Hanan insulted her by yelling at her that she was a "whore" and screaming that she was "only good to suck dick! I give you $4,000 a month for that! I'd be better off to f*** any [other] woman or anybody! I'll pay any money because it is better than you!"

The court entered an emergency order of protection against Hanan and set the matter for a hearing on February 13, 2009. On January 27, 2009, Hanan filed an emergency motion to vacate the order of protection and an evidentiary hearing was held on February 4, 2009. Following testimony by both parties, the trial court noted the stark differences in the testimony of the two required a credibility determination and, having observed the witnesses and heard their testimony, found Judith credible. The court concluded that Hanan's behavior rose to a level of harassment requiring an order of protection.

The order of protection was subsequently dismissed *ab initio* by a June 8, 2009, agreed disposition order awarding Judith exclusive possession of the marital residence and an automobile, and also forbidding any harassment or contact between the parties. Despite the order, the parties continued to have acrimonious relations, including numerous instances of damage to Judith's vehicle requiring various repairs and leading to Judith calling the police. Hanan admitted to one instance of damage to Judith's vehicle while it was parked at Nordstrom's at Old Orchard Mall parking lot, whereby Hanan placed bodily fluids including vomit, urine and feces on the driver's seat. The court entered an order requiring Hanan to have the vehicle cleaned.

On March 17, 2010, judgment for dissolution of marriage was entered with the issue of maintenance for Judith remaining open. The parties continued to maintain an acrimonious relationship, including various cross-allegations of property damage and harassing conduct. On June 21, 2012, Judith filed another emergency petition for an order of protection against Hanan. Judith claimed that Hanan vandalized her vehicle numerous times, vandalized Judith's storage area at her garage, harassed and threatened her via e-mail, and gave an anonymous complaint to her employer that led to her termination. Judith claimed that she suffered from severe anxiety and lived in fear of Hanan.

¶ 11    At the emergency hearing on the petition, Judith testified to these allegations and the court entered an order prohibiting Hanan from all personal contact with Judith, including by telephone, e-mail and third parties. In addition, Hanan was prohibited from entering or remaining at the Nordstrom store where Judith was employed. The temporary order was effective until July 12, 2012, when a further hearing was set. According to several filings in the record, Judith's June 21, 2012, petition was dismissed on July 12, 2012.

¶ 12    On the afternoon of July 12, 2012, after the order on Judith's June 21, 2012, petition had expired, Hanan filed his own petition for an emergency order of protection. Hanan alleged therein that Judith had continued to contact him after the June 21, 2012, order had been entered. He alleged that Judith was often drunk, calling him late at night, asking for money, threatening to have Hanan arrested if he did not have sexual relations with her, threatening suicide, and sending him naked pictures of herself. Hanan also alleged that Judith had parked outside his home, followed him in her vehicle, and interrupted his meetings with friends. At the emergency hearing on the petition, Hanan testified to his allegations but the trial court refused to accept that his claims supported a finding that this was an emergency or that he was afraid. The court continued the matter to August 3, 2012, for further hearing.

¶ 13    On July 20, 2012, Judith filed an emergency petition for a protective order against Hanan alleging that he had damaged her vehicle and harassed her. Judith asserted that this scared her and caused her great anxiety such that she was afraid to leave her house and to sleep. At the emergency hearing on the petition, Judith testified to these allegations but admitted that she never witnessed Hanan actually vandalizing her vehicle. The trial court denied the petition, finding that it was based purely on speculation and there was no evidence actually showing that Hanan had damaged Judith's property.

¶ 14    On July 31, 2012, Judith filed the underlying petition for an order of protection against Hanan, amending that petition on August 3, 2012. In an agreed order of the parties on August 3, 2012, Judith was restrained and enjoined from accessing the Dunkin' Donuts restaurant that Hanan frequented with friends. Hanan was enjoined and restrained from accessing two other Dunkin' Donuts restaurants as well as a T-Mobile store in Skokie.

¶ 15    On August 17, 2012, Hanan moved to strike portions of Judith's petition. On October 9, 2012, the court ordered, *inter alia*, "hearing on the cross petitions for order of protection shall be held on 11/30, 2012 at 9:00, without further notice. All trial subpoenas are continued to said date." On November 2, 2012, Judith moved to amend her petition to add new allegations of abuse and that was granted on November 13, 2012. On November 20, 2012, Hanan filed a motion to dismiss Judith's petition reasserting his motion to strike claims that Judith's allegations were barred by collateral estoppel as denied in the previous denial of petitions or that they were speculative and unsupported.

¶ 16    On November 30, 2012, Judith filed an amended affidavit in support of her petition and Hanan presented argument and testimony in support of his petition for a protective order. The transcript of this hearing is not of record. Judith asserts that Hanan presented his case first, as his petition was filed first, and that Judith limited her examination to Hanan's allegations, expecting to present her case-in-chief after Hanan concluded presenting his case. The hearing was continued to December 13, 2012, allegedly after Hanan's case-in-chief. On December 13, 2012, the court continued the matter for hearing "regarding pending petitions for order of protection" to January 13, 2013. On January 3, 2013, an order was entered continuing all pending motions in the case to January 30, 2013.

¶ 17    On January 30, 2013, the trial court entered several orders, including granting Hanan's petition for an order of protection to be effective until July 30, 2013. The court also set a hearing for argument on Hanan's motion to dismiss Judith's amended petition for an order of protection on February 5, 2013. On February 5, 2013, following argument, the trial court dismissed Judith's petition for an order of protection stating in a written order that "Hanan's motion to dismiss is granted because the [Illinois Domestic Violence Act] does not permit mutual orders of protection and only allows for correlative orders which are out of state mutual orders of protection as defined in the article submitted by Judge Gamrath, which are the court's oral findings made on today's date." See Celia Guzaldo Gamrath, *Enforcing Orders of Protection Across State Lines*, 88 Ill. B.J. 452 (2000) (Gamrath Article). Judith appeals the trial court's order granting Hanan's petition for an order of protection and the order granting Hanan's motion to dismiss Judith's petition.

¶ 18                                    II. ANALYSIS

¶ 19    We begin by noting that we are without the benefit of a response brief from Hanan to respond to Judith's arguments on appeal. As our supreme court has said, "[w]e do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Accordingly, on April 18, 2014, this court entered an order noting that Hanan had failed to file a brief within the time prescribed by rule and that this case would be taken for consideration on the record and Judith's appellant's brief only.

¶ 20    Unfortunately, we are also limited by an incomplete record. " 'A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " (Internal quotation marks omitted.) *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010) (quoting *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1995)). Supreme Court Rule 341(h)(6), (7) requires a statement of the facts, with citation to the record, necessary for an understanding of the case and a clear statement of contentions with supporting citation of authorities and pages of the record relied on. Ill. S. Ct. R. 341(h)(6), (7) (eff. July 1, 2008). These rules are not merely suggestions, but are necessary for the proper and efficient administration of the courts. *First National Bank of Marengo v. Loffelmacher*, 236 Ill. App. 3d 690, 691-92 (1992).

¶ 21    We will not sift through the record or complete legal research to find support for this issue. Ill-defined and insufficiently presented issues that do not satisfy the rule are considered waived. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007). In fact, for these violations, this court may not only strike portions of the brief or consider arguments waived, but strike a brief in its entirety and dismiss the matter. *Marengo*, 236 Ill. App. 3d at 692. Further, where the record is not complete, "the reviewing court must presume the circuit

court had a sufficient factual basis for its holding and that its order conforms with the law." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005).

¶ 22 Judith argues on appeal that the trial court erred in construing section 215 of the Illinois Domestic Violence Act (750 ILCS 60/215 (West 2010)) in dismissing Judith's petition for an order of protection and that the trial court abused its discretion in granting Hanan's petition for an order of protection. Because the order of protection at issue in this case expired by its own terms on July 30, 2013, the issues asserted by Judith are either moot or arguably moot. As we have no argument from Hanan, we will not perform the research and argument to determine whether the issues are moot. Even assuming both issues were rendered moot, the issues are reviewable under the public interest exception to the mootness doctrine because of the societal interest in protecting victims of domestic violence. *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784 (1997). Despite these various issues and because of the important social interest and lack of authority, we render an opinion on Judith's claims.

¶ 23 First, we may summarily dispose of Judith's second issue presented as the record does not contain a transcript of the proceedings before the court from the November 30, 2012, hearing on Hanan's petition for an order of protection. Hanan's petition included a supporting affidavit alleging that he was fearful of Judith's continued contact and mental instability. A hearing was held on Hanan's petition with testimony and argument and the trial court granted the petition on January 30, 2013. A trial court's entry of an order of protection will not be overturned absent a clear abuse of discretion. *Lutz v. Lutz*, 313 Ill. App. 3d 286, 289 (2000). Without a record of the hearing before this court, we presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law and was not an abuse of discretion.

¶ 24 Judith's next argument is an issue that has not been addressed by this court and merits full consideration. While we do not have a record of the oral findings made by the trial court on February 5, 2013, the court's written order cites the Illinois Domestic Violence Act and the Gamrath Article as support for the conclusion that mutual orders of protection are improper under the statute and required dismissal of Judith's petition. We hold that the trial court misinterpreted the statute and erred in dismissing Judith's petition for a protective order.

¶ 25 A court's primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Prazen v. Shoop*, 2013 IL 115035, ¶ 21. The first step in determining legislative intent is to examine the language of the statute, and when the language is clear and unambiguous, the statute must be given its plain meaning without resort to further aids of statutory construction. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). For determining the meaning of undefined terms in a statute, a court may turn to the dictionary for assistance. *Id.* at 225. In addition, by the terms of the Illinois Domestic Violence Act, the statute is to be liberally construed and applied to promote its underlying purposes, namely, to support and protect victims of domestic abuse and to prevent any further abuse from occurring. 750 ILCS 60/102 (West 2010).

¶ 26 Section 215 of the Illinois Domestic Violence Act provides in full:

"§ 215 Mutual orders of protection; correlative separate orders. Mutual orders of protection are prohibited. Correlative separate orders of protection undermine the purposes of this Act and are prohibited unless both parties have properly filed written pleadings, proved past abuse by the other party, given prior written notice to the other party unless excused under Section 217, satisfied all prerequisites for the type of order

- 6 -

and each remedy granted, and otherwise complied with this Act. In these cases, the court shall hear relevant evidence, make findings, and issue separate orders in accordance with Sections 214 and 221. The fact that correlative separate orders are issued shall not be a sufficient basis to deny any remedy to petitioner or to prove that the parties are equally at fault or equally endangered." 750 ILCS 60/215 (West 2010).

¶ 27     Considering the plain language of the section and whether the trial court properly dismissed Judith's petition, the key determination is the meaning of the terms "mutual order of protection" and "correlative order of protection." As Judith notes, the terms are not defined by the statute and it is helpful to understand how this issue has arisen and been treated within the arena of domestic violence prevention. The language of this section largely mirrors that of a similar provision within the section concerning domestic violence under the Code of Criminal Procedure of 1963. 725 ILCS 5/112A-15 (West 2010). Section 215 was amended at the same time as section 112A-15 under Public Act 87-1186 (eff. Jan. 1, 1993). While this section also does not define these terms, the legislature's differing approach aids our consideration of these terms. Section 112A-15 provides, in full:

"§ 112A-15 Mutual orders of protection; correlative separate orders. Mutual orders of protection are prohibited. Correlative separate orders of protection undermine the purposes of this Article. If separate orders of protection in a criminal or delinquency case are sought, there must be compliance with Section 112A-2. Nothing in this Section prohibits a party from seeking a civil order of protection.

If correlative separate orders of protection result after being sought in separate criminal or delinquency actions in accordance with Section 112A-2, that fact shall not be a sufficient basis to deny any remedy to either petitioner or to prove that the parties are equally at fault or equally endangered." 725 ILCS 5/112A-15 (West 2010).

¶ 28     The only case where this court has considered section 215 is *People v. Stiles*, 334 Ill. App. 3d 953 (2002), an appeal of a criminal conviction for violating an order of protection. In *Stiles*, the defendant's former girlfriend obtained a temporary emergency order of protection against defendant on January 6, 2000, barring any abuse, harassment, or any contact. On January 11, 2000, the defendant sought his own order of protection against his former girlfriend that was granted the next day and included a provision barring her from Kelly's Pub. However, the trial court was unaware of the prior order of protection and entered an order of protection on January 12, 2000. On January 20, 2000, the parties got into an altercation at Kelly's Pub and the defendant called the police. When the police arrived they ultimately arrested the defendant. *Id.* at 954-55.

¶ 29     The defendant was found guilty following a bench trial. The trial court found that the defendant fraudulently obtained his order of protection by failing to inform the court of the standing order of protection against him and not serving his former girlfriend. This court affirmed, finding the defendant violated the terms of the order of protection against him and that he had secured his order of protection in violation of section 215 of the Illinois Domestic Violence Act. *Id.* at 957-58. Section 215 was quoted in full, but there was no analysis of why this section was violated, the court only stating that the defendant fraudulently obtained his order and that the presumption that orders are presumed valid had been overcome. *Id.*

¶ 30     In his dissent, Justice Reid also fully quoted the language of section 215, but also did not examine the language of that section in opining that the defendant lacked the required *scienter* to be found guilty. Justice Reid noted that "[s]ituations like this, where individuals basically

race to the courthouse to acquire *ex parte* orders of protection, are not uncommon." *Id.* at 960 (Reid, J., dissenting). Justice Reid concluded that if the trial judge had asked if there was a separate order "[t]his simple question from the judge would have prevented this situation from occurring," opining that only one order of protection would have issued if the judge had been properly advised. *Id.*

¶ 31 Accordingly, we are without any case law analyzing the language of section 215 to determine if the trial court's interpretation was improper. The terms "correlative" and "mutual" are defined in Black's Law Dictionary including similar terms such as "related or corresponding" and "reciprocal." Black's Law Dictionary 347, 1039 (7th ed. 1999). However, the plain language of the statute and associated research support our holding that the trial court erred in equating the two and finding Judith's petition barred as seeking a mutual order of protection.

¶ 32 It is clear that mutual orders of protection are prohibited while correlative orders of protection are disfavored as the language in section 215 as well as that in section 112A-15 makes abundantly clear. Mutual orders of protection typically occur within the same document, arising from a singular pleading and proceeding, despite the fact that one party may not have even desired an order of protection. See Joan Zorza, *What Is Wrong With Mutual Orders of Protection?*, Domestic Violence Reporter 4(5), 67-68, 78 (June/July 1999). The problems with mutual orders of protection are plentiful and have been well documented to include everything from violating due process, to the court's treatment of these orders, to implementation by the parties and the police, to actually exacerbating the violence and abuse against the abused party. Zorza, *supra*; see also Elizabeth Topliffe, *Why Civil Protection Orders Are Effective Remedies for Domestic Violence but Mutual Protective Orders Are Not*, 67 Ind. L.J. 1039, 1065 (1992) ("The woman feels that she is to blame for the violence or that the justice system is not holding the batterer accountable for his behavior. The court verifies the batterer's belief that he is not to blame for the violence because it is caused by external factors. A mutual order is also less effective for enforcement purposes and can be used in future proceedings against the victim to the advantage of the batterer."). Accordingly, given the recognized deficiencies with mutual orders of protection and the plain language of the statute, mutual orders of protection are clearly prohibited so as to further its grander goals.

¶ 33 However, correlative orders of protection are not the same as mutual orders of protection and the plain language of the statute providing separately for each type of order indicates the legislature's clear understanding of this. Both the Illinois Domestic Violence Act and the Code of Criminal Procedure distinguish the two orders and provide similar language discouraging the entry of correlative orders. Importantly, both sections allow for such orders if a separate action is commenced and completed pursuant to the requirements of each statute. Therefore, unlike mutual orders there is not a straight prohibition on correlative orders of protection.

¶ 34 This conclusion is also supported by our research of secondary sources, including the Gamrath Article cited by the trial court. The main thrust of the Gamrath Article involves the enforcement of orders of protection across state lines, particularly in light of the decision in *United States v. Morrison*, 529 U.S. 598 (2000), striking down a civil rights remedy for victims of gender-motivated violence provided by section 13981 of the Violence Against Women Act (42 U.S.C. § 13981 (2000)). While much of the discussion in the Gamrath Article is not germane to the issue at hand, there is a general section on orders of protection that, presumptively, is what the trial court referenced. The relevant paragraph reads:

"The [Illinois Domestic Violence Act] provides for three types of orders of protection–emergency, interim, and plenary–which depend on the type of notice and due process given, the duration of the order, and the available remedy. Mutual orders of protection are prohibited under the [Illinois Domestic Violence Act], but out-of-state mutual orders of protection may be given full faith and credit if both parties submitted a written request for the order and it was issued upon a showing of mutual abuse. Such orders are known in Illinois as correlative orders of protection." Gamrath, *supra*, at 454.

In a footnote, Gamrath defines mutual orders of protection as "orders entered against both parties requiring them to abide by the restraints and other forms of relief in the order." Gamrath, *supra*, at 454 n.31. Accordingly, Gamrath's conclusion is in line with this court's determination and it is clear the trial court misinterpreted the article.

¶ 35 Unlike the flat prohibition of mutual orders, the statute allows for correlative orders where separate pleadings, notice and proof of abuse are provided by each party seeking an order of protection. The statute further requires that a separate order be issued in accordance with the other provisions of the Illinois Domestic Violence Act. 750 ILCS 5/60-215 (West 2010). As addressed in the aforementioned law journals, this process alleviates many of the important concerns that require prohibition of mutual orders. This also protects the court and the parties from the issue Justice Reid's dissent highlights of a race to the courthouse to bar an adversary from seeking an order of protection. If correlative orders of protection were also flatly prohibited, it would leave open the possibility that an abuser could foreclose the ability of the abused to receive protection by the court and law enforcement not only physically, but in legal proceedings. This conclusion would run completely against the purposes of the Illinois Domestic Violence Act.

¶ 36 The plain language of section 215 indicates that correlative orders of protection, like that sought by Judith, may be issued and provides a clear roadmap for a party and the court to follow, namely that: "both parties have properly filed written pleadings, proved past abuse by the other party, given prior written notice to the other party unless excused under Section 217, satisfied all prerequisites for the type of order and each remedy granted, and otherwise complied with this Act." 750 ILCS 60/215 (West 2010). In this case, the record indicates that Judith filed a separate petition for a protective order, commencing a separate action under section 202 of the Illinois Domestic Violence Act. 750 ILCS 60/202 (West 2010). In further compliance with the statute, and section 215 in particular, Judith filed a written petition, provided an affidavit in support of her allegations, provided notice to all parties, and was prepared to present separate proof in support of her petition. Accordingly, the trial court erred by dismissing her petition.

¶ 37                                     III. CONCLUSION

¶ 38 For the reasons stated, we affirm the judgment of the circuit court in part and reverse in part and remand the matter for further proceedings.

¶ 39 Affirmed in part and reversed in part; cause remanded for further proceedings.