In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 16-2212 & 16-3515

CEDRIC DUPREE,

*Plaintiff-Appellant,*

*v.*

MARCUS HARDY, et al.,

*Defendants-Appellees.*

B. MICHAEL SCHNEIDER,

*Plaintiff-Appellant,*

*v.*

WILL COUNTY, ILLINOIS, et al.,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 1:13-cv-06528 & 08 C 3054 — **John Robert Blakey & Thomas M.
Durkin**, *Judges*.

_____

SUBMITTED MARCH 27, 2017[*] — DECIDED JUNE 13, 2017

_____

[*] We have agreed to decide these cases without oral argument because
the briefs and record adequately present the facts and legal arguments,
and oral argument would not significantly aid the court. See Fed. R. App.
P. 34(a)(2)(C).

————————————

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. We have consolidated for decision two cases in which the district judges and volunteer lawyers generously gave uncooperative plaintiffs every opportunity to pursue their claims. In both cases the plaintiffs responded with further failures to cooperate with orderly litigation. After showing more patience than necessary, the district judges dismissed both cases for failure to prosecute. We affirm both eminently reasonable decisions.

*Factual and Procedural Background*

We begin by describing Cedric Dupree's lawsuit. Dupree sued Illinois prison staff under 42 U.S.C. § 1983 for allegedly prolonging his incarceration. Proceedings were protracted, primarily because Dupree, who had been in and out of jail, dropped out of contact with the district court and the lawyer the court had recruited on his behalf. Early in the proceedings, in October 2014, Judge Leinenweber granted Dupree's request for a lawyer and recruited Robert Sweeney to represent him.

The case was reassigned to Judge Blakey, and in February 2015, the parties filed a joint status report. Sweeney reported that he had been attempting to contact Dupree to prepare an amended complaint, "but to date there has been no contact." According to the report, Dupree was seeking damages for "a series of deprivations of his rights, most notably, being held beyond the time he should have been released." Judge Blakey referred the case to Magistrate Judge Valdez to conduct a settlement conference.

A series of status hearings followed. At a hearing in April 2015, attorney Sweeney could not attend, but "Defense counsel . . . reported on Sweeney's behalf that he had been unable to make any contact with [Dupree], who was no longer incarcerated." Magistrate Judge Valdez ordered Dupree to appear personally at a status hearing the following month. He failed to appear. Judge Valdez continued the hearing to July and ordered Dupree to appear at the next hearing with the warning that if he did not, "this matter may be dismissed for want of prosecution." Sweeney was present for the July hearing but Dupree again failed to appear. (Sweeney informed the judge that he had personally mailed the order to Dupree's last known address and left him multiple voicemails but still had not received any response.)

Judge Valdez issued a report recommending that the case be dismissed for want of prosecution. She explained that Dupree had failed to communicate with his lawyer "in any way" and that his "repeated failure to obey court orders to appear demonstrate to this court's satisfaction that he lacks any intent to prosecute this case." She warned Dupree that he had 14 days to file objections to her report and recommendation. See Fed. R. Civ. P. 72(b)(2). No objection followed, and Judge Blakey dismissed the case. Adopting the magistrate judge's report and recommendation, Judge Blakey agreed that Dupree "persistently failed to appear in court, even when specifically ordered to do so."

Five months later, Dupree moved to reinstate the case, asserting that he had been released only recently after a yearlong incarceration. He stated that he had been rearrested in November 2014, about a month after his counsel had been recruited; that counsel falsely told the court that he had not been

incarcerated; and that he had written to the court's clerk to inform the court that he was incarcerated. The district court scheduled a hearing and directed Dupree to "be prepared . . . to advise the Court of any information concerning [his] November 2014 incarceration."

Dupree then missed that hearing too. Judge Blakey waited until the end of his motion call and called the case again. Dupree still had not appeared. Not receiving any word from Dupree, the judge denied the motion. Dupree arrived fifteen minutes after the court had concluded its motion call. He promptly filed a motion to reconsider, saying that he had been late because of traffic. The judge reiterated that Dupree had been late and declined to reconsider his earlier ruling.

We now turn to Schneider's suit, which also asserts a claim that the defendants violated his constitutional rights by detaining him for too long. Schneider's case has also been protracted. We have considered Schneider's case twice before, ruling both times that some of the claims could proceed. See *Schneider v. County of Will*, 366 F. App'x 683, 684 (7th Cir. 2010); *Schneider v. County of Will*, 528 F. App'x 590, 591 (7th Cir. 2013).

Over the course of the case, Schneider has tried repeatedly to disqualify the defendants' counsel. Nine times he asked the district court to disqualify the defendants' attorneys or to treat the county as if it had not appeared. He argued that the Will County State's Attorney did not comply with Illinois law when he appointed two private attorneys to defend the county in this suit. The district court denied each request. Schneider also filed an interlocutory appeal on this issue, which we denied as premature. See *Schneider v. County of Will*, No. 14-3605, slip. op. (7th Cir. Jan. 22, 2015).

In the meantime, Schneider neglected to prepare his case for trial. He failed to attend a witness's deposition that occurred near his home on the same day that he drove more than 40 miles to the courthouse to file one of his motions to disqualify defense counsel. He also did not respond to defense counsel's communications regarding a pretrial memorandum. Finally, disobeying court orders, he failed to submit a witness list, exhibit list, proposed jury instructions, proposed voir dire questions, or his objections to the defendants' pretrial submissions.

The defendants moved to dismiss the suit for failure to prosecute. The district court took the motion under advisement but meanwhile gave Schneider another chance by continuing the trial date and recruiting an attorney to help him prepare. Three months later, though, the court granted that attorney's request to withdraw. The recruited attorney stated that she had been unable to convince Schneider to attend any meetings to prepare for trial and had not heard from him in months. Yet during that time, Schneider had continued to try to disqualify the defendant's counsel by filing a petition for a writ of mandamus with the Illinois Supreme Court, which that court eventually denied.

The district court ran out of patience with Schneider when he charged out of the final pretrial conference. Before the conference, Judge Durkin had warned Schneider that he would dismiss the case if Schneider did not appear. Schneider came to the conference but asked to postpone the trial until the Illinois Supreme Court ruled on his mandamus petition. When the judge denied that request, noting that he had already continued the trial date several times, Schneider "literally threw" a motion to recuse the judge at the courtroom deputy and told

the judge "you're recused." Schneider then asked to be ex-
cused. Responding more calmly than most judges likely
would, Judge Durkin reminded Schneider that he would dis-
miss the suit if Schneider left the conference early. Schneider
"abruptly left" anyway. The judge denied Schneider's motion
for recusal and dismissed the case with prejudice for failure
to prosecute.

*Analysis*

We commend the judges and the volunteer lawyers whom
they recruited for their efforts to ensure that Dupree and
Schneider had fair chances to have their claims heard in court.
Consistent with the highest standards of professionalism,
there is a long tradition in the courts of this circuit among law-
yers who are willing to give of their time and skill to represent
indigent civil parties. Such efforts *pro bono publico* ("for the
public good") benefit the clients, the lawyers, and the courts.

There are limits, however. The clients who benefit from
this volunteer service can be expected, like any clients, to meet
their basic obligations as a party to a lawsuit: to communicate
with their lawyers and to cooperate with the discovery and
case management process. We recognize that things can hap-
pen in a person's life that may interfere with the ability to par-
ticipate from time to time. Trial judges have considerable lee-
way in exercising their judgment in dealing with such prob-
lems. With a party's repeated or willful failures to fulfill his or
her obligations, courts and recruited counsel can take appro-
priate remedial action, which may include withdrawal of
counsel and/or dismissal of the case.

The statute governing *in forma pauperis* proceedings in federal courts authorizes a district court to request an attorney to represent any person unable to afford counsel. 28 U.S.C. § 1915(e)(1). In *Pruitt v. Mote,* 503 F.3d 647, 653–59 (7th Cir. 2007) (en banc), we laid out the factors district courts should consider when deciding whether to recruit counsel in a civil case. We emphasized in *Pruitt* that § 1915(e)(1) does not create a right to counsel in civil cases. *Id*. at 657. District courts need not reward with free counsel people who are unwilling to meet their obligations as parties. The valuable help of volunteer lawyers is a limited resource. It need not and should not be squandered on parties who are unwilling to uphold their obligations — to stay in communication with the court and their lawyers, to cooperate in the discovery process, and to show up for court hearings and conferences when their personal presence is needed.

The district judges in these cases showed more patience than we require, and they had ample reason to dismiss the suits. See *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011). The judges tolerated repeated and substantial noncompliance with deadlines after warning against disobedience. We should not be understood as criticizing the judges' patience. They were closer to the situations than we are, and dealing with such problems is properly left to the discretion of the trial judge. The judges, volunteer lawyers, and opposing lawyers and parties all had their time wasted. Also, because both plaintiffs were proceeding *in forma pauperis* in the district court, a financial sanction as an alternative to dismissal was unlikely to be effective. See *Secrease v. Western & Southern Life Ins. Co*., 800 F.3d 397, 402 (7th Cir. 2015); *Rivera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014).

Dupree failed to appear at two status hearings in his case despite being ordered to appear personally and warned of the possible consequences if he did not. Though the judge did not know that Dupree might have been incarcerated at that time, once the judge found out, he gave Dupree yet another chance to appear. Dupree wasted that chance by not showing up to court, both at the scheduled time and afterward, when the judge called the case again later in the morning. The sanction of dismissal is appropriate for plaintiffs like Dupree "who fail to attend multiple hearings and have been warned of the possibility of dismissal." *McInnis v. Duncan*, 697 F.3d 661, 664 (7th Cir. 2012); see *Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 666 (7th Cir. 2006); *Ball v. City of Chicago*, 2 F.3d 752, 753, 760 (7th Cir. 1993). We are also familiar with Chicago traffic, which Dupree blamed for his last failure to appear, but by that time Dupree's repeated failures to appear had exhausted the court's patience and his own credibility with the court.

As for Schneider, he had delayed the trial, violated the court's orders to supply critical information to the defendants, ignored its warning that leaving the final pretrial conference would lead to dismissal, and offered no legitimate excuse for his contemptuous behavior. When the district court responded to Schneider's behavior by recruiting a lawyer for him, Schneider continued his refusal to cooperate. A court may dismiss an action if a party "is substantially unprepared to participate—or does not participate in good faith—in [a pretrial] conference." Fed. R. Civ. P. 16(f)(1)(B), 37(b)(2)(A)(v). This history amply supported dismissal in Schneider's case.

We turn to the remaining arguments on appeal. Dupree challenges the district court's denial of his Rule 60(b) motion

to reinstate. We cannot meaningfully review that decision because Dupree has not provided a transcript of the hearing in which the court explained its reasons for denying the motion. See Fed. R. App. P. 10(b)(2); *Hicks v. Avery Drei*, 654 F.3d 739, 743–44 (7th Cir. 2011). Schneider does not deny that he failed to prosecute. He contends only that the district court erred by refusing to disqualify the defendants' counsel. He has made this frivolous argument to us before, in a separate suit. See *Schneider v. County of Will*, 123 F. App'x 715, 716–17 (7th Cir. 2005). As we previously decided, Schneider does not have standing to disqualify the attorneys because he cannot show that their representation of the county harmed him in any way. See *O'Connor v. Jones*, 946 F.2d 1395, 1399–1401 (8th Cir. 1991) (concluding prisoner did not have standing to disqualify private law firms hired as special assistant attorneys general).

Accordingly, in these appeals both district court judgments are

AFFIRMED.