In the

# United States Court of Appeals

### For the Seventh Circuit

No. 19-2595

FRED CARTWRIGHT,

*Plaintiff-Appellant,*

*v.*

SILVER CROSS HOSPITAL and
CROTHALL HEALTHCARE, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 CV 6759 — **John Robert Blakey**, *Judge.*

SUBMITTED MARCH 19, 2020 — DECIDED JUNE 18, 2020

Before MANION, SYKES, and ST. EVE, *Circuit Judges.*

SYKES, *Circuit Judge.* Fred Cartwright sued his former
employer asserting claims of discrimination based on his
race, sex, and age. Throughout four years of litigation, he
repeatedly failed to appear for his deposition, missed a
status hearing, would not follow the local rules regarding
motion practice, refused to respond to discovery despite
repeated orders to do so, and ignored the judge's multiple

warnings that his conduct would lead to dismissal of the suit. Despite this obstructive behavior, the judge continued to recruit a succession of pro bono attorneys to assist Cartwright, each of whom invested many hours of valuable time in the case before moving to withdraw because the client would not cooperate. After permitting the fourth—yes, *fourth*—volunteer lawyer to withdraw, the judge finally dismissed the case as a sanction for want of prosecution.

We affirm the dismissal and take this opportunity to remind judges that they need not and should not recruit volunteer lawyers for civil claimants who won't cooperate with the basic requirements of litigation. Pro bono representation of indigent civil litigants is a venerable tradition in the legal profession. The courts must be careful stewards of this limited resource.

## I. Background

In August 2015 Fred Cartwright filed a pro se complaint against his former employer Silver Cross Hospital and its management company Crothall Healthcare alleging claims of discrimination based on his race and sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; discrimination based on his race in violation of 42 U.S.C. § 1981; and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623. The district judge appointed counsel for Cartwright through the Settlement Assistance Program in the Northern District of Illinois for the limited purpose of attempting to negotiate an early settlement. The parties did not reach an agreement, so the pro bono attorney was relieved of the limited representation.

While representing himself, Cartwright failed to respond to the defendants' discovery requests and refused to schedule his deposition. Cartwright also filed many motions to compel discovery and moved to hold the defendants in contempt despite the court's order that he must meet and confer with the defendants concerning these discovery disputes. Without explanation and despite Cartwright's refusal to cooperate, the judge recruited a lawyer to represent him pro bono. Counsel filed an amended complaint adding several additional claims. But shortly after that filing, the judge permitted the attorney to withdraw because of fundamental disagreements with Cartwright about the case.

The judge—again without explanation—recruited another pro bono lawyer to assist Cartwright and noted that this would be the final time. With Cartwright represented once again, the parties engaged in another unsuccessful settlement conference and then continued with discovery. But after 14 months and more than 530 hours of work, this third attorney (and his associate) also moved to withdraw citing substantial and irreconcilable disagreements with Cartwright.

The judge thereafter entered partial summary judgment for the defendants on two of Cartwright's claims, narrowing the case. Cartwright responded with multiple motions, including several accusing the judge of bias and demanding that he recuse himself. At the same time, the defendants moved to compel discovery and requested sanctions because Cartwright refused to answer interrogatories or provide other discovery responses in violation of the Federal Rules of Civil Procedure. Cartwright refused to respond to these motions despite the judge's repeated orders to do so. He also

missed a status hearing without notifying the court of any scheduling conflicts.

The judge ordered Cartwright to appear at the next hearing and warned that "any future failure to appear may result in a dismissal for want of prosecution." Surprisingly, however, the order also explained that if Cartwright promised that he would work with counsel in good faith, the court would be "inclined to grant [p]laintiff yet another (and final) opportunity to enjoy the professional assistance of recruited counsel."

Prior to the rescheduled status hearing, the defendants moved to dismiss the case with prejudice for failure to prosecute because of Cartwright's persistent refusal to respond to discovery and noncompliance with the court's orders. Cartwright appeared at the status hearing and assured the judge that he would work with counsel in good faith. Although Cartwright had repeatedly refused to follow court orders and the rules of litigation, the judge recruited *yet another* pro bono attorney to assist him. The judge held the defendants' motion to dismiss in abeyance to give newly appointed counsel a chance to get up to speed on the case and then denied it as moot.

Several months later, on the eve of Cartwright's scheduled deposition, his attorney notified the defendants that Cartwright would not attend the deposition. No explanation was given. Counsel then moved to withdraw based on irreconcilable differences with the client. The judge granted the withdrawal motion. The defendants again moved to dismiss based on Cartwright's continued obstructive conduct, including his failure to appear for his deposition, the missed status hearing, and Cartwright's persistent refusal to

resolve discovery disputes or comply with court orders. The judge took the motion under advisement and gave Cartwright time to find new representation on his own.

After four months with no appearance by new counsel, the judge set a date for Cartwright's deposition, cautioning him that failure to appear "may result in dismissal of the case with prejudice for failure to prosecute or otherwise to comply with the orders of this [c]ourt." Cartwright then bombarded the court with multiple motions, including several to cancel his deposition because of his anxiety. The judge denied these motions but limited the deposition to a four-hour session (with additional sessions, if necessary) to address his concerns.

Cartwright appeared at the deposition but refused to an-swer many of counsel's questions. He said that he was not feeling well and that his doctor had advised him not to attend. Because the defendants could not finish their ques-tioning, the judge scheduled a date for Cartwright's contin-ued deposition, warning that his failure to appear "[would] result in the case being dismissed for failure to prosecute this case and for failure to comply with court orders." The judge also told Cartwright that none of his motions complied with court rules or standing orders and that his continued non-compliance could result in dismissal of the case. In addition, the judge rejected Cartwright's very belated attempt to file a second amended complaint without leave of court, explain-ing that "the rambling[,] 88-page filing" was not a proper amendment but "merely contain[ed] a list of personal and discovery-related grievances [p]laintiff has with [d]efen-dants and their attorneys."

When Cartwright failed to appear for his rescheduled deposition, the judge at long last followed through on his repeated warnings and dismissed the case with prejudice for failure to prosecute. He noted that Cartwright did not seek a continuance, "which would potentially have allowed defense counsel to avoid the costs of coming to Chicago, yet again, for the properly-noticed and long-overdue deposition of [p]laintiff." The judge also cited Cartwright's "persistent and willful failure to comply with the Federal Rules of Civil Procedure, the Local Rules of this [c]ourt, and this [c]ourt's orders and standing orders." By now it was June 2019, and Cartwright had been litigating his case for nearly four years.

## II. Discussion

On appeal Cartwright does not engage with the district court's reason for dismissing his case but instead argues the merits of his claims and accuses the judge of bias. We could affirm on that basis alone. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). For completeness we note that this case presents a clear "record of delay or contumacious conduct" amply justifying a dismissal for failure to prosecute. *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699 (7th Cir. 2014) (quotation marks omitted). Cartwright's willful failure to appear at his deposition was cause enough. *See Collins v. Illinois*, 554 F.3d 693, 696–97 (7th Cir. 2009). Yet his misconduct was far broader in scope.

During four years of litigation, Cartwright skipped three scheduled depositions, missed a status hearing, filed dozens of motions that violated local rules and the court's standing orders despite repeated warnings, served noncompliant discovery responses and otherwise refused to satisfy with his discovery obligations, and ignored many court orders.

The judge warned Cartwright at least eight times that his conduct put his lawsuit in jeopardy of dismissal before finally following through and dismissing the case after nearly four years of incorrigible obstruction.

Indeed, the judge had ample grounds to dismiss the case much earlier in the litigation. The defendants' first motion to dismiss for failure to prosecute catalogued Cartwright's wanton disregard of basic litigation obligations and court rules. The case should have ended then. Had the judge granted the first dismissal motion, the defendants would have been spared the time and expense of defending against a plaintiff so obviously unwilling to prosecute his own case.

Inexplicably, the judge persisted in using the discretionary authority codified in 28 U.S.C. § 1915(e)(1) to recruit a succession of pro bono attorneys to represent this willfully uncooperative litigant. That was a serious mistake. Setting aside whether this case met the standards for recruitment of volunteer counsel—the judge did not make any findings[1]—Cartwright's persistent noncompliance with his discovery obligations and the court's orders should not have been rewarded with pro bono legal assistance. Yet the judge ensured that Cartwright enjoyed the professional services of no fewer than four different volunteer attorneys. Three of the court-appointed lawyers, who together spent nearly

[1] A decision to recruit pro bono counsel for an indigent civil litigant requires the court to make the following inquiries: "(1) has the indigent plaintiff made reasonable efforts to obtain counsel or been effectively precluded from [doing so];" and if so, "(2) given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (quotation marks and citation omitted).

700 hours on the case, withdrew because of Cartwright's lack of cooperation.

It's worth reemphasizing that the assistance of a pro bono lawyer in civil litigation is a privilege. *See Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). "The valuable help of volunteer lawyers is a limited resource. It need not and should not be squandered on parties who are unwilling to uphold their obligations" as litigants. *Dupree v. Hardy*, 859 F.3d 458, 462–63 (7th Cir. 2017).

AFFIRMED