NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 16, 2022[*]
Decided February 18, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 21-1273

| | |
|---|---|
| RICHARD L. KELLY, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:17-cv-03649-JRS-DML |
| BRUCE IPPEL and LORETTA DAWSON, *Defendants-Appellees*. | James R. Sweeney II, *Judge.* |

**O R D E R**

Richard Kelly, an Indiana prisoner, sued a prison doctor and a nurse practitioner alleging that they were deliberately indifferent to his chronic pain in violation of his

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Eighth Amendment rights. The district court entered summary judgment for the defendants based on the conclusion that they exercised professional medical judgment in choosing treatment for Kelly. Because there is no evidence that the defendants provided treatment below the standards required by the Constitution, we affirm.

Kelly is chronically ill; he has spinal stenosis, nerve damage, and degenerative bone disease, and now resides full time in the prison's infirmary. We describe Kelly's medical care based on the undisputed facts at summary judgment, viewed in the light most favorable to Kelly. *Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019).

Kelly's conditions cause chronic pain and numbness, for which he has received treatment from Dr. Bruce Ippel. At several appointments with Dr. Ippel in 2016, Kelly specifically requested methadone (an opioid) for pain relief. But because of the risks attendant to regular use of opioids, Dr. Ippel instead prescribed baclofen (a muscle relaxer); gabapentin (an anticonvulsant used for nerve pain); and tramadol (an as-needed opioid pain reliever). Other physicians who treated Kelly in the past had prescribed drugs, including methadone and oxycodone (also an opioid), as well as higher doses of tramadol. Throughout the next three years, Dr. Ippel gave Kelly hip injections for localized pain relief and referred him to outside specialists for diagnostic testing. In addition, Dr. Ippel entered orders for Kelly to receive a wheelchair and be moved permanently to the infirmary, where Kelly receives his pain medication four times per day (as opposed to twice per day in the prison's general population) and has his meals delivered. Despite all this, Kelly continues to experience chronic pain.

After Dr. Ippel initially prescribed the three medications, Kelly had one appointment with Loretta Dawson, a nurse practitioner, in November 2016. Dawson evaluated Kelly's medical history and expressed concern at how long Kelly had been taking tramadol, which can be habit-forming. Dawson noted that Kelly had a history of substance abuse. When she explained that she would discontinue the prescription for tramadol for those reasons, Kelly argued that she should continue the drug and raise the dosage. Kelly's response increased Dawson's concerns about drug dependency, and she discontinued the prescription despite his protests. Kelly had no further appointments with Dawson, and Dr. Ippel restarted the tramadol prescription a few months later when Kelly complained of continued pain.

Kelly sued Dr. Ippel and Dawson under 42 U.S.C. § 1983 for deliberate indifference to his severe chronic pain. The other defendants he sued exited the case at screening, through voluntary dismissal by Kelly, or upon the entry of summary judgment in their favor based on his failure to exhaust administrative remedies.

About a year into the case after Kelly had amended the complaint once and the issue of exhaustion of administrative remedies had been decided, Kelly moved for leave to file a second amended complaint. The judge denied the motion because (1) the proposed pleading included two defendants who had already obtained summary judgment based on exhaustion; (2) Kelly raised claims based on circumstances arising after the events included in the earlier complaints; and (3) he brought claims under a vicarious-liability theory, which is improper under § 1983. Discovery proceeded. Along the way, the judge denied Kelly's motions to recruit counsel, appoint an expert, and compel discovery of the defendants' records of professional discipline.

Dr. Ippel and Dawson moved for summary judgment on the deliberate-indifference claim. They argued that although Kelly had a "long and significant medical history," they had exercised appropriate medical judgment in treating his serious pain. In response Kelly primarily argued that he required more or stronger pain medication—specifically, opioid pain relievers—that the defendants had refused. The judge granted the defendants' motion, concluding that Kelly did not produce any evidence that their treatment decisions deviated from accepted professional standards.

Kelly timely appealed.[1] He first argues that Dr. Ippel and Dawson were not entitled to summary judgment because their medication decisions contradicted recommendations from other doctors, Dawson cruelly deprived him of tramadol, and his medications did not provide complete pain relief. We review the decision to grant a motion for summary judgment de novo. *Id.*

A medical provider's choice of treatment violates the Constitution when "no minimally competent professional would have so responded under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). Here, no reasonable jury could find that Dr. Ippel or Dawson provided care that fits that description. Dr. Ippel responded to Kelly's complaints of pain with multiple treatments like prescription drugs and localized

---

[1] Kelly's notice of appeal was docketed in this court more than 30 days after the judge entered summary judgment for the defendants. After supplemental briefing, this court determined that (1) Kelly mailed a motion to alter or amend judgment within 28 days of the summary-judgment decision, stopping the time for filing a notice of appeal, and (2) Kelly submitted his notice of appeal for mailing within 30 days of the judge's order denying his motion to alter or amend judgment. Kelly's appeal is therefore timely. FED. R. APP. P. 4(a)(4), 4(c).

injections, further diagnostic testing, and lifestyle modifications like a wheelchair and transfer to the infirmary. Although Kelly is dissatisfied with this treatment because it diverged from what his prior doctors did and his medications did not provide complete relief, neither fact is evidence of a constitutional violation. With his chronic conditions, even optimal medical care might not alleviate all pain, and Dr. Ippel and Dawson weighed the risks and benefits of particular pain medications. *See Lockett*, 937 F.3d at 1025. And disagreement among doctors on appropriate treatment is also insufficient to demonstrate an Eighth Amendment violation. *See Pyles*, 771 F.3d at 409. Further, Dawson's decision to discontinue tramadol after her professional assessment of Kelly's personal risk of substance abuse and given his continued use of two other pain medications does not evince deliberate indifference, even though Dr. Ippel reversed the decision. *See Lockett*, 937 F.3d at 1025; *Pyles*, 771 F.3d at 409. Because Kelly offered no evidence that Ippel and Dawson's treatment decisions were not the product of their medical judgment, Kelly's disagreement cannot sustain a deliberate-indifference claim.

Kelly next challenges a number of discretionary rulings, beginning with the denial of his motion for leave to amend his complaint a second time. Because the judge's decision was based on the futility of allowing the amendment, our review of that legal conclusion is de novo. *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 562 (7th Cir. 2020). We agree that Kelly's proposed amended complaint did not state any additional claims. There already was a judgment for two of the named defendants based on exhaustion, and Kelly did not (or could not) redress that, so the judgment was final. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Two more defendants, regional medical directors, were not personally involved in Kelly's care and could not be vicariously liable under § 1983. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). Finally, the actions of the newly named treating providers occurred after the course of medical treatment described in the amended complaint and would expand the scope of the case; the court permissibly concluded that those allegations should be brought in a separate suit. *See Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017).

Kelly also challenges the rulings denying his motions to appoint a neutral expert, recruit pro bono counsel, and compel the disclosure of any professional discipline the defendants had incurred. None of these challenges has merit. First, Kelly does not develop any argument about why it was unreasonable for the judge to conclude that at least until trial, it did not need expert assistance to understand the evidence, which could be understood by a layperson. *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004).

Second, Kelly does not establish that the denial of his motion for recruited counsel was erroneous or that it prejudiced him. *See Henderson v. Ghosh*, 755 F.3d 559, 564–65 (7th Cir. 2014). The judge gave two sound reasons for not recruiting counsel: first, another judge in the district had entered an order requiring Kelly to show special circumstances when moving for attorney representation because he had abused the privilege in another case; second, the judge considered Kelly's ability to litigate his case himself, his past litigation experience, the high quality of his existing filings, and his specific recall of past events, and concluded that he could effectively represent himself. *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc); *see Cartwright v. Silver Cross Hosp.*, 962 F.3d 933, 937 (7th Cir. 2020) (recruitment of pro bono counsel is a privilege that should not be wasted). We add that Kelly lost based on the affirmative evidence that the defendants exercised professional medical judgment, which is not something an attorney could have averted.

Third, Kelly again could not demonstrate the required prejudice on appeal with respect to the denial of his motion to compel discovery of the defendants' professional disciplinary records. *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015). Assuming any records existed and Kelly had obtained them, they would not have been admissible at summary judgment because prior bad acts cannot be introduced to show a propensity for providing inadequate medical treatment. FED. R. EVID. 404(b); *see Gevas v. McLaughlin*, 798 F.3d 475, 487 (7th Cir. 2015).

Finally, Kelly appears to renew his request for this court to recruit counsel for him; our order denying his first such motion explained that the merits panel could look at the issue anew. Like the district judge, however, we find that Kelly can manage by himself. *See Pruitt*, 503 F.3d at 655. Kelly's briefs refer to the relevant law and facts and present cogent arguments. And Kelly's contention that he needs counsel to help him recruit an expert witness would be relevant only if we were to remand.

AFFIRMED